KOSTOS AND LAMER, P.C.

Law Offices
1608 Walnut Street, Suite 1300
Philadelphia, Pennsylvania 19103
TELEPHONE: (215) 545-0570
Facsimile No. (215) 545-4617
E-MAIL: kostos_lamer@msn.com

October 4, 2007

**Via Facsimile Transmission 202-512-9749**

General Counsel
General Accountability Office
441 G Street NW, Room 1103
Washington, DC 20548

Attn: Bid Protest Control Unit

**RE: Solicitation No. W9133L-07-T-0033**
**(Protest by Precision Lift, Inc,)**

Dear Sir or Madam:

This office represents Precision Lift, Inc. ("PLI") an offeror on the above-referenced solicitation ("the Solicitation"). On behalf of PLI, we are herewith submitting a protest, pursuant to FAR Subpart 33.1, against the award of a contract to Spika Welding and Manufacturing, Inc. ("Spika"), as is more fully set forth herein.

In accordance with the requirements of 4 CFR § 21.1(c), the following information is provided:

i) The Protester:

Precision Lift, Inc.
130 South Oak Pointe Drive
Seneca, SC 29672

tel. 864-985-0804
fax 864-985-0881

ii) The Protester concerns action by:

The U.S. Arm National Guard Bureau
1411 Jefferson Davis Hwy
Arlington, VA

PLAINTIFF'S EXHIBIT
I

Theresa M. Glasgow, CPT NGB, Contracting Officer
tel. 703-607-1267
fax 703-607-1742

iii) The Contract at issue has been awarded. The Awardee is:

Spika Welding and Manufacturing, Inc.
2035 Curlew Road
Moccasin, MT 59462

406-423-5678 (tel/fax)

iv) As this protest is timely, being submitted within FIVE (5) DAYS of the date of the post-award debriefing, PLI requests that a stop-work order issue, pursuant to the Competition In Contracting Act. Sec 10 U.S.C. § 3553(d).

v) As is required by 4 CFR § 21.1(c), a copy of this protest will be furnished within ONE (1) DAY of its filing to the contracting officer.

## I. Background

On August 9, 2007, the Solicitation was issued by the U.S. Army National Guard Bureau, Arlington, VA ("the Agency"). As amended, the Solicitation sought sealed offers on a total of THIRTY (30) Fall Protection Maintenance Platforms (the "Platforms") for CH-47, UH – 60 and AH – 64 helicopters. Per Amendment 0002, offers were due on September 7, 2007.

The Solicitation incorporated a "Performance Specification" on pages 3-5, detailing the performance characteristics required of an offeror's Platforms; Amendments 0001 and 0002 then made several changes to the Performance Specification. In the initial provisions, the Performance Specification (as amended) provided as follows:

> PURPOSE: This performance specification establishes the United States (US) Government's technical and performance requirements for the Phase Maintenance Platforms for the UH-60, CH-47, and AH-64.
>
> DEFINITIONS:
> MINIMUM PERFORMANCE STANDARDS (MPS)
> <u>Mandatory</u> capabilities that are required to be offered

> in the candidate platform. Minimum Performance Standards shall not be traded against other technical or non-technical requirements in the offeror's proposal.
>
> THRESHOLD (T) Capabilities that should be offered in the candidate platform in order to satisfy the end-user's requirements for safety, effectiveness, and suitability of the platform. Threshold capabilities may be traded against other technical and non-technical requirements in the offeror's proposal.

(emphasis in original).

One requirement included in the Performance Specification's section entitled "CONSTRUCTION" stated:

> (MPS) [i.e., Minimum Performance Standard] The phase maintenance platform shall be a commercial, non-developmental item that is compliant with 29 CFR 1910.

(emphasis supplied)(Note 29 CFR 1910 refers to OSHA regulations). This requirement for a non-developmental item was confirmed in Amendment 0002, which included the following question/answer:

> The following have been added by full text:
>
> ANSWER TO QUESTIONS
> 1. "Are you [i.e., the Agency] referencing previously designed and in use full wrap around phase/depot level maintenance platforms?"
> YES

(emphasis supplied). The Solicitation provided the following information covering evaluation of offers and contract award. (On pages 5-7).

**EVALUATION CRITERIA**

Introduction The purpose of this evaluation is to provide the Government with the necessary information to select the offeror

for contract award in support of the National Guard Bureau. This selection will be based upon an integrated assessment of proposals submitted in response to the solicitation. The evaluation will be accomplished using the criteria described in the following paragraphs. Contract award will be to the offeror whose proposal is evaluated to be best value to the Government.

Basis for Award The Government intends to award the Fall Protection Maintenance Platforms contract to one contractor. The Government will select a winning party from the offerors responding to this solicitation based on the best value to the Government. This best value award will be determined by results of evaluation. The offeror whose proposal conforms to the solicitation requirements, and is best value to the Government based upon past performance, technical and price, as stated herein will be selected.

An unsatisfactory rating in any one factor may disqualify the offeror for an award. When evaluating proposals, the Government reserves the right to consider all information and sources available. For example, the Government may rely upon information from its own agencies and systems such as Government audit agencies and past performance systems, as well as information from commercial sources such as Dun and Bradstreet Reports and Open Ratings.

The Government intends to award without discussions, unless the Contracting Officer deems discussions are necessary.

**EVALUATION CRITERIA**:

Contract award will be based on an integrated assessment of each offeror's response to the solicitation. The integrated assessment will address the following: (a) the offeror's demonstrated understanding of all the potential efforts and the offeror's capability to perform required tasks. The assessment will determine the overall value of the proposals submitted by each offeror, judged in terms of the potential to best satisfy the needs of the government; (b) the government evaluation of the following areas, listed in descending order of importance:

(1) Technical
(2) Past Performance
(3) Price

Criteria are listed in descending order of importance. The Technical area is considered to be more important than the Past Performance and Price. The non-price factors when combined are significantly more important than price. A weak, deficient, or high-risk evaluation for any criteria may be cause for disqualification of the offeror. Award will be made on the basis of the best overall value.

Evaluation Criteria:

**Technical.** The contractor must address the Safety, Performance, and Construction, and Design Specification aspects of the Performance Specification in this solicitation.

Technical Quality Scale:

| RATING | DESCRIPTION |
|---|---|
| Very Good | Offeror's proposal demonstrates a very good understanding of the requirements and the approach is of good quality. Strengths clearly outbalance any weaknesses that exist. There are no deficiencies. |
| Good | Offeror's proposal demonstrates an acceptable understanding of the requirements and the approach is of good quality. There may be strengths or weaknesses and the strengths balance the weaknesses. No deficiencies exist. |
| Unsatisfactory | Offeror's proposal does not demonstrate an understanding of the requirements and the approach is of unsatisfactory quality. Weaknesses or deficiencies out weigh the strengths. |

**Past Performance.** Past performance on contracts currently ongoing or completed within the last five years that are directly <u>similar in scope and complexity of the performance specifications</u>. Each offeror will be evaluated on its performance under existing and prior contracts <u>for similar products</u> or services. Evaluation will not be based on an absolute standard of performance. The government reserves the right to consider all aspects of an offeror's performance history, <u>but will attribute more significance to recent work comparable in scope to this solicitation</u>.

Past Performance Risk Assessment Scale:

| ASSESSMENT | ASSESSMENT DESCRIPTION |
|---|---|
| Low Risk | The past work and experience is mostly high quality and relevant. There is a high probability of success that the offeror should be able execute the work based upon previous performed. |
| Moderate Risk | The quality and relevance of the past work and experience is mixed. There is moderate probability of success that the offeror will be able to execute the work based upon previous performance. |
| High Risk | The past work and experience is below average to poor quality and/or past work and experience is not particularly relevant. There is a moderate to high probability that the offeror will be unable to execute successfully the work based upon previous performance. |
| Unknown | The past work and experience; if any, is not relevant to the solicitation's objectives and requirements. |

**Price.** The offeror's proposal is fair and reasonable to both the offeror and the Government. Completeness: The offeror's proposal responds to all solicitation requirements and the cost estimates are traceable to those requirements. Cost/Technical Tradeoff: While cost/price is not the most important factor in the evaluation, the importance of cost/price as an evaluation factor will increase with the degree of non-cost factor equality of competing proposals. When the proposal with the lowest evaluated cost/price is other than the proposal(s) with the higher non-cost merit, a cost/technical tradeoff analysis is necessary to decide whether the technical superiority of the other proposal(s) warrants payment of the additional price or cost. This decision will involve a comparison of the combination of non-cost strengths, weaknesses, and risks and cost/price offered in each proposal and judgment as to which provides the best combination. The government may be willing to pay a higher price for non-costs factors, if the added benefits are worth the premium.

(emphasis supplied).

PLI is a Vietnam Era Service Disabled Veteran Owned Small Business. Since 1998, PLI has been supplying these Platforms to agencies and

departments of the U.S. Government, pursuant to its GSA Federal Supply Schedule contract GS-07F-9893H. Including sales to commercial customers and sales under its GSA contract, PLI has supplied over THREE HUNDRED FIFTY (350) Platforms identical or similar to the Platforms required under the Solicitation since 2001, including TWENTY-FOUR (24) to the Army National Guard Bureau (i.e., the Agency) pursuant to a 2005 order.

PLI submitted a timely proposal in response to the Solicitation. In its proposal, PLI addressed both the technical requirements as set forth in the Performance Specification and its Past Performance, identifying the orders under which it had supplied the SIXTY (60) Platforms in the past THREE (3) YEARS. PLI offered a total price of $2,625,524.00.

On September 23, 2007, PLI became aware of a story in the Great Falls (Montana) Tribune, in which Spika announced that it had received the contract for the THIRTY (30) Platforms. Thereupon, PLI contacted the contracting officer to ascertain the status of the procurement. It received a Memorandum For Record ("MFR") dated September 24, stating that the award had been made to Spika at a price totaling $2,704,000 (i.e., $78,476.00 higher than PLI's offered price) and that PLI could request a debriefing. A copy of the MFR is attached at "A."

By letter dated October 1, 2007 the Agency provided PLI with a written debriefing. It stated that the Spika proposal had received a Technical Ratings of "Very Good" and a Past Performance rating of "Low Risk," while the PLI proposal had been rated "Good" and "Low Risk" respectively. The difference in Technical Rating was largely based on certain perceived improvements offered by Spika. Thus, according to the Agency paying Spika's higher price was in the Government's best interest. A copy of the debriefing Memorandum is also attached, at "B."

## II. Discussion

PLI recognizes that GAO function is not to reevaluate proposals. Rather GAO examines the record to ensure that the agency's evaluation of offeror's proposals was unreasonable and in accordance with the criteria in the solicitation. Sikorsky Aircraft Company; Lockheed Martin Systems Integration Osweger, B-299145, B-299145.2, B.299145.3, February 26, 2007, 2007 CPD ¶ 45 at page 4. In that regard:

> [A]n agency may not announce in the solicitation that it will use one evaluation plan and then follow another; once

> offerors are informed of the criteria against which their proposals will be evaluated and the source selection decision made, the agency must adhere to those criteria or inform all offerors of significant changes.

Id. citing Remington Arms Co., Inc., B-297374, B-297374.2, Jan 12, 2006, 2006 CPD ¶ 32 at 15. In the instant situation, the Agency clearly failed to evaluate proposals in accordance with the requirements of the Solicitation.

A. Spika Proposal Could Not Have Proposed A Technically-Compliant Item, Hence It Should Not Have Received A Rating Of "Very Good" For The Technical Evaluation Factor.

As noted, supra, the Performance Specification included in full in the Solicitation included the following requirement:

> (MPS) The phase maintenance platform shall be a commercial, non-developmental item. . . .

Thus, the Performance Specification stated that the requirement for a "commercial, non-developmental platform," was a "mandatory performance standard" that could not be traded against other technical or non-technical factors. That requirement (i.e., for a commercial, non-developmental platform) was further stressed in Amendment 0002 to the Solicitation, wherein the following Question/Answer was included:

> The following have been added by full text:
>
> ANSWER TO QUESTIONS
>
> 1. "Are you referencing previously designed and in use full wrap around phase/depot level maintenance platforms?" YES

(emphasis supplied).

Simply put, the Platforms offered by Spika cannot meet this requirement. It has never produced and delivered these Platforms as "commercial, non-developmental item[s]" and it has none currently "in use." Therefore, its proposal could not have been assigned a rating of Very Good (i.e., "There are no deficiencies") for the Technical Evaluation Factor, i.e., "the offeror must address the Safety, Performance, and Construction, and Design Specification aspects of

the Performance Specification" (emphasis supplied). A rating of "Very Good" is clearly contrary to the terms of the solicitation, and suggests that the Agency traded the mandatory requirement a commercial, non-developmental platform for some other perceived enhancement.

B. PLI's Proposal Merited A Rating Higher Then "Good" On The Technical Evaluation Factor.

PLI's proposal, contrary to Spika's proposal, specifically listed the same Platforms it has delivered to various civilian and military customers, including the Agency, over the past several years. In other words, unlike SPIKA, PLI offered "commercial, non-developmental items." Moreover, as stated, supra, PLI has delivered over THREE HUNDRED AND FIFTY (350) Platforms similar or identical to the ones being purchased under the Solicitation all of which met or exceeded the requirements of the Performance Specification. Clearly, PLI's proposal should have received a rating of "Very Good."

C. Spika's Proposal Could Not Have Satisfied The Solicitation's Requirements For An Offeror's Past Performance; Hence The Rating Of "Low Risk" Was Unreasonable.

As is the case with respect to the Solicitation's "Technical" requirements, Spika could not meet the Solicitation's Past Performance requirements. As noted above, the Solicitation required, as follows, with respect to Past Performance:

> Past performance on contracts . . . that are directly similar in scope and complexity of the performance specifications. Each offeror will be evaluated on its performance under existing and prior contracts for similar products. . . .

(emphasis supplied). Given the Spika has never performed on a production contract for Platforms, PLI submits that Spika's Past Performance should have been rated either High Risk ("The past work and experience . . . is not particularly relevant") or Unknown ("The past work and experience, if any, is not relevant to the Solicitation's objectives and requirements"). Yet, the Agency rated Spika's Past Performance as "Low Risk," which is clearly contrary to the terms of the Solicitation.

PLI would contrast Spika's lack of relevant experience with PLI's extensive experience supplying the very same Platforms to the Government for over the

past nearly SEVEN (7) YEARS. In fact, PLI has manufactured and delivered TWENTY-FOUR (24) Platforms to this Agency under a 2005 order.

## III. Conclusion

The award of the contract arising from the Solicitation to Spika was clearly unreasonable and not in conformance with the evaluation scheme established in the Solicitation. PLI respectfully requests that GAO order the award to Spika terminated for convenience and the contract award made to it. PLI also requests that GAO recommend reimbursement of the cost pursuing the instant protest. Insofar as this protest is concerned, PLI requests a copy of the Administrative Report and the opportunity to comment thereon.

Respectfully submitted,

**Marc Lamer**
Attorney for Precision Lift, Inc.

ML:jdr

NGB-ZC-AQ 24 September 2007

MEMORANDUM FOR RECORD

Subject: Notification of Award of Contract for Fall Protection Platforms W9133L-07-T-0033

Dear John Tollenaere (Precision Lift),

Thank you for your interest in the above referenced project for the National Guard Bureau. Your proposal was considered but was not selected for award. Award has been made to Spika Welding and Manufacturing, 2035 Curley Road, Moccasin, MT 59462. The award amount is $2,704,000.00.

In accordance with FAR 15.506, you may request a post award debriefing by submitting a written request along with your questions for debriefing to CPT Theresa Glasgow within 3 days after receipt of this notice. Debriefings may be done orally or in writing, or any other method acceptable to the Contracting Officer. For this award the Contracting Officer has elected to use the written method for these Debriefings. Again, when you request a debriefing please include all your questions.

At a minimum, the debriefing information shall include – (1) The Government's evaluation of the significant weaknesses or deficiencies in the offeror's proposal, if applicable; (2) The overall evaluated cost or price (including unit prices), and technical rating, if applicable, of the successful offeror and the debriefed offeror, and past performance information on the debriefed offeror; (3) A summary of the rationale for award; (4) Reasonable responses to relevant questions about whether source selection procedures contain in the solicitation, applicable regulations, and other applicable authorities were followed.

The debriefing shall not include point-by-point comparisons of the debriefed offeror's proposal with those of other offerors. Moreover, the debriefing shall not reveal any information prohibited from disclosure by FAR 24.202 or exempt form release under the Freedom of Information Act (5 U.S.C. 552) including – (1) Trade secrets; (2) Privileged or confidential manufacturing processes and techniques; (3) Commercial and financial information that is privileged or confidential, including cost breakdowns, profit, indirect cost rates, and similar information; and (4) The names of individuals providing reference information about an offeror's past performance.

THERESA M GLASGOW
CPT, NGB
Contracting Officer

A

**DEPARTMENTS OF THE ARMY AND AIR FORCE**
NATIONAL GUARD BUREAU
1411 JEFFERSON DAVIS HIGHWAY
ARLINGTON, VA 22202-3231

REPLY TO ATTENTION OF

NGB-ZC-AQ

1 October 2007

Mr. John Tollenaere
130 South Oak Pointe Drive
Seneca, SC 29672

Dear Mr. Tollenaere:

Reference:

1. MEMORANDUM FOR RECORD: Subject: Notification of Award of Contract for Fall Protection Platforms W9133I-07-T-0033; dated 24 September 2007; signed by Theresa M Glasgow, CPT, NGB, Contracting Officer

2. Letter, Precision Lift, Inc, Subject: W9133L-07-T-0033 Request for Debriefing, dated 25 September 2007; signed by John Tollenaere, President

In accordance with Federal Acquisition Regulation (FAR) 15.506 (d) and reference 2 above the following information is provided.

(1) The government's evaluation of the proposal submitted by Precision Lift did not contain any significant weaknesses or deficiencies. The proposal submitted by Precision Lift did not contain any weaknesses or deficiencies, significant or otherwise.

(2) The overall evaluated price (including unit prices), and technical rating, if applicable, of the successful offeror and the debriefed offeror, and past performance information on the debriefed offeror.

2.1 The overall evaluated price (including unit prices) of the successful offeror (Spika) and Precision Lift

| ITEM NO. | Supplies/Services | Spika Unit Cost | Spika Total Amount | Precision Lift Basic Price Total Amount |
|---|---|---|---|---|
| | Fall Protection Maintenance Platform System per the Performance Specification | | | |
| 0001 | CH-47 | $150,000. | $1,050,000. | $988,132 |
| 0002 | UH-60 | $86,000 | $946,000. | $865,592 |
| 0003 | UH-60 Tail Sections | $39,000 | $156,000 | $164,665 |
| 0004 | AH-64 | $69,000 | $552,000 | $607,135 |
| | **TOTAL** | $344,000.00 | $2,704,000.00 | $2,625,524 |



B

Subject: Debriefing for Precision Lift Enterprises, LLC

2.2 The technical rating of the successful offeror (Spika) was Very Good and the technical rating of Precision Lift was Good. The past performance risk assessment for the successful offeror (Spike) was Low Risk and the past performance risk assessment for Precision Lift was Low Risk.

2.3 No overall ranking of the offerors was developed during source selection by the agency.

2.4 Your proposal was determined to be in the competitive range however; it was not selected for award. The platforms proposed by Spika exceeded requirement utilizing an advanced interlocking alignment pin system which was determined to provide greater strength, support and safety than that proposed by Fernandez. The Performance Specification definitions sated that "Threshold capabilities may be traded against other technical and non-technical requirements..." In analyzing the tradeoff of the additional cost to the government against the benefit of this interlocking alignment pin system it was determined to be in the government's best interest to make the award to Spika.

2.5 The make and model numbers of the items to be delivered by the successful offeror as shown in the design drawings contain Proprietary and Confidential markings and cannot be released by the government.

Your letter referenced in 2 above contained some very specific questions which are addressed below:

1) The solicitation specified that the design specifications would be used in the technical evaluation of the Performance Specification.

2) An evaluation of the design indicates the measurement specifications comply with the Performance Specification.

3) A documented Finite Element Analysis was not a requirement of the technical evaluation as the platforms are required to build to OHSA standards.

4) Positive: LW Aluminum materials outlined in the design exceed the minimum load bearing and tensile strengths required. Negatives: None noted

5) The scoring rationale used for the technical proposal was as shown in the solicitation.

6) Offeror's comparison indicated extruded LW Aluminum extended to be used for planking; creating a non-skid **High strength-to-weight ratio**, result is a very strong part with relatively low weight. 10 inch casters to be used instead of 6 inch casters. Cranks are designed specifically for the stands versus boat trailer cranks.

7) The scoring rationale used for the past performance evaluation was as shown in the solicitation

8) There were no added value allowances from any offeror considered outside of the solicitation requirements.

9) The GSA Federal Supply Schedules are considered to be "optional" for the DOD. The procedures that were followed to make the decision as to whether to use the FSS's or not were in compliance with FAR 8.4 and DFARS 8.4. That is unless there is an adequate justification for a sole source acquisition, contracting officers must consider reasonably available information by reviewing at least three schedule contractors.

Subject: Debriefing for Precision Lift Enterprises, LLC

10) Subject solicitation was awarded to Spika Welding & Mfg on 15 September 2007.

I appreciate your effort in responding to our proposal and encourage you to submit proposals on future National Guard bureau requirements.

If you have any questions, please contact me at 703-607-1267 or Theresa.glasgow@ngb.ang.af.mil

Sincerely,

THERESA M. GLASGOW
CPT, NGB
Contracting Officer