# KOSTOS AND LAMER, P.C.

Law Offices
1608 Walnut Street, Suite 1300
Philadelphia, Pennsylvania 19103
TELEPHONE: (215) 545-0570
Facsimile No. (215) 545-4617
E-MAIL: kostos_lamer@msn.com


April 8, 2008

**Via Facsimile Transmission 202-512-9749**

General Counsel
General Accountability Office
441 G Street NW, Room 1103
Washington, DC 20548

Attn: Bid Protest Control Unit

**RE: Solicitation No. W9133L-07-T-0033**
**(Protest by Precision Lift, Inc.)**

Dear Sir or Madam:

This office represents Precision Lift, Inc. ("PLI") an offeror on the above-referenced solicitation ("the Solicitation"). On behalf of PLI, we are herewith submitting a protest, pursuant to FAR Subpart 33.1, against the award of a contract to Spika Welding and Manufacturing, Inc. ("Spika"), as is more fully set forth herein.

In accordance with the requirements of 4 CFR § 21.1(c), the following information is provided:

i) The Protester:

Precision Lift, Inc.
130 South Oak Pointe Drive
Seneca, SC 29672

tel. 864-985-0804
fax 864-985-0881

ii) The Protester concerns action by:

The U.S. Army National Guard Bureau
Att. NGB-ZC-AQ
1411 Jefferson Davis Hwy
Arlington, VA 22202-3231

PLAINTIFF'S EXHIBIT
N
tabbies

Patrick R. Staresina, Maj NGB, Contracting Officer
tel. 703-607-1267
fax 703-607-1742

iii) The Contract at issue has been awarded. The Awardee is:

Spika Welding and Manufacturing, Inc.
2035 Curlew Road
Moccasin, MT 59462

406-423-5678 (tel/fax)

iv) As this protest is timely, being submitted within TEN (10) DAYS of the date of the reevaluation decision (as is more fully set forth, *infra*, PLI requests that a stop-work order issue, pursuant to the Competition In Contracting Act. Sec 10 U.S.C. § 3553(d).

v) As is required by 4 CFR § 21.1(c), a copy of this protest will be furnished within ONE (1) DAY of its filing to the contracting officer.

## I. Background

On August 9, 2007, the Solicitation was issued by the U.S. Army National Guard Bureau, Arlington, VA ("the Agency"). As amended, the Solicitation sought sealed offers on a total of THIRTY (30) Fall Protection Maintenance Platforms (the "Platforms") for CH-47, UH – 60 and AH – 64 helicopters. Per Amendment 0002, offers were due on September 7, 2007.

The Solicitation incorporated a "Performance Specification" on pages 3-5, detailing the performance characteristics required of an offeror's Platforms; Amendments 0001 and 0002 then made several changes to the Performance Specification. In the initial provisions, the Performance Specification (as amended) provided as follows:

> PURPOSE: This performance specification establishes the United States (US) Government's technical and performance requirements for the Phase Maintenance Platforms for the UH-60, CH-47, and AH-64.
>
> DEFINITIONS:
> MINIMUM PERFORMANCE STANDARDS (MPS)
> <u>Mandatory</u> capabilities that are required to be offered

> in the candidate platform. Minimum Performance Standards shall not be traded against other technical or non-technical requirements in the offeror's proposal.
>
> THRESHOLD (T) Capabilities that should be offered in the candidate platform in order to satisfy the end-user's requirements for safety, effectiveness, and suitability of the platform. Threshold capabilities may be traded against other technical and non-technical requirements in the offeror's proposal.

(emphasis in original).

One requirement included in the Performance Specification's section entitled "CONSTRUCTION" stated:

> (MPS) [i.e., Minimum Performance Standard] The phase maintenance platform shall be a commercial, non-developmental item that is compliant with 29 CFR 1910.

(emphasis supplied)(Note 29 CFR 1910 refers to OSHA regulations). This requirement for a non-developmental item was confirmed in Amendment 0002, which included the following question/answer:

> The following have been added by full text:
>
> ANSWER TO QUESTIONS
> 1. "Are you [i.e., the Agency] referencing previously designed and in use full wrap around phase/depot level maintenance platforms?"
> YES

(emphasis supplied). The Solicitation provided the following information covering evaluation of offers and contract award. (On pages 5-7).

**EVALUATION CRITERIA**

Introduction The purpose of this evaluation is to provide the Government with the necessary information to select the offeror

for contract award in support of the National Guard Bureau. This selection will be based upon an integrated assessment of proposals submitted in response to the solicitation. The evaluation will be accomplished using the criteria described in the following paragraphs. Contract award will be to the offeror whose proposal is evaluated to be best value to the Government.

Basis for Award The Government intends to award the Fall Protection Maintenance Platforms contract to one contractor. The Government will select a winning party from the offerors responding to this solicitation based on the best value to the Government. This best value award will be determined by results of evaluation. The offeror whose proposal conforms to the solicitation requirements, and is best value to the Government based upon past performance, technical and price, as stated herein will be selected.

An unsatisfactory rating in any one factor may disqualify the offeror for an award. When evaluating proposals, the Government reserves the right to consider all information and sources available. For example, the Government may rely upon information from its own agencies and systems such as Government audit agencies and past performance systems, as well as information from commercial sources such as Dun and Bradstreet Reports and Open Ratings.

The Government intends to award without discussions, unless the Contracting Officer deems discussions are necessary.

**EVALUATION CRITERIA**:

Contract award will be based on an integrated assessment of each offeror's response to the solicitation. The integrated assessment will address the following: (a) the offeror's demonstrated understanding of all the potential efforts and the offeror's capability to perform required tasks. The assessment will determine the overall value of the proposals submitted by each offeror, judged in terms of the potential to best satisfy the needs of the government; (b) the government evaluation of the following areas, listed in descending order of importance:

(1) Technical
(2) Past Performance
(3) Price

Criteria are listed in descending order of importance. The Technical area is considered to be more important than the Past Performance and Price. The non-price factors when combined are significantly more important than price. A weak, deficient, or high-risk evaluation for any criteria may be cause for disqualification of the offeror. Award will be made on the basis of the best overall value.

Evaluation Criteria:

**Technical.** The contractor must address the Safety, Performance, and Construction, and Design Specification aspects of the Performance Specification in this solicitation.

Technical Quality Scale:

| RATING | DESCRIPTION |
|---|---|
| Very Good | Offeror's proposal demonstrates a very good understanding of the requirements and the approach is of good quality. Strengths clearly outbalance any weaknesses that exist. There are no deficiencies. |
| Good | Offeror's proposal demonstrates an acceptable understanding of the requirements and the approach is of good quality. There may be strengths or weaknesses and the strengths balance the weaknesses. No deficiencies exist. |
| Unsatisfactory | Offeror's proposal does not demonstrate an understanding of the requirements and the approach is of unsatisfactory quality. Weaknesses or deficiencies out weigh the strengths. |

**Past Performance.** Past performance on contracts currently ongoing or completed within the last five years that are directly <u>similar in scope and complexity of the performance specifications</u>. Each offeror will be evaluated on its performance under existing and prior contracts <u>for similar products</u> or services. Evaluation will not be based on an absolute standard of performance. The government reserves the right to consider all aspects of an offeror's performance history, <u>but will attribute more significance to recent work comparable in scope to this solicitation</u>.

Past Performance Risk Assessment Scale:

| ASSESSMENT | ASSESSMENT DESCRIPTION |
|---|---|
| Low Risk | The past work and experience is mostly high quality and relevant. There is a high probability of success that the offeror should be able execute the work based upon previous performed. |
| Moderate Risk | The quality and relevance of the past work and experience is mixed. There is moderate probability of success that the offeror will be able to execute the work based upon previous performance. |
| High Risk | The past work and experience is below average to poor quality and/or past work and experience is not particularly relevant. There is a moderate to high probability that the offeror will be unable to execute successfully the work based upon previous performance. |
| Unknown | The past work and experience; if any, is not relevant to the solicitation's objectives and requirements. |

**Price.** The offeror's proposal is fair and reasonable to both the offeror and the Government. Completeness: The offeror's proposal responds to all solicitation requirements and the cost estimates are traceable to those requirements. Cost/Technical Tradeoff: While cost/price is not the most important factor in the evaluation, the importance of cost/price as an evaluation factor will increase with the degree of non-cost factor equality of competing proposals. When the proposal with the lowest evaluated cost/price is other than the proposal(s) with the higher non-cost merit, a cost/technical tradeoff analysis is necessary to decide whether the technical superiority of the other proposal(s) warrants payment of the additional price or cost. This decision will involve a comparison of the combination of non-cost strengths, weaknesses, and risks and cost/price offered in each proposal and judgment as to which provides the best combination. The government may be willing to pay a higher price for non-costs factors, if the added benefits are worth the premium.

(emphasis supplied).

PLI is a Vietnam Era Service Disabled Veteran Owned Small Business. Since 1998, PLI has been supplying these Platforms to agencies and

departments of the U.S. Government, pursuant to its GSA Federal Supply Schedule contract GS-07F-9893H. Including sales to commercial customers and sales under its GSA contract, PLI has supplied over THREE HUNDRED FIFTY (350) Platforms identical or similar to the Platforms required under the Solicitation since 2001, including TWENTY-FOUR (24) to the Army National Guard Bureau (i.e., the Agency) pursuant to a 2005 order.

PLI submitted a timely proposal in response to the Solicitation. In its proposal, PLI addressed both the technical requirements as set forth in the Performance Specification and its Past Performance, identifying in detail the orders under which it had supplied the SIXTY (60) Platforms in the past THREE (3) YEARS. PLI offered a total price of $2,625,524.00.

On September 23, 2007, PLI became aware of a story in the Great Falls (Montana) Tribune, in which Spika announced that it had received the contract for the THIRTY (30) Platforms. Thereupon, PLI contacted the contracting officer to ascertain the status of the procurement. It received a Memorandum For Record ("MFR") dated September 24, stating that the award had been made to Spika at a price totaling $2,704,000 (i.e., $78,476.00 higher than PLI's offered price) and that PLI could request a debriefing. A copy of the MFR is attached at "A."

By letter dated October 1, 2007 the Agency provided PLI with a written debriefing. It stated that the Spika proposal had received a Technical Ratings of "Very Good" and a Past Performance rating of "Low Risk," while the PLI proposal had been rated "Good" and "Low Risk" respectively. The difference in Technical Rating was largely based on certain perceived improvements offered by Spika. Thus, according to the Agency paying Spika's higher price was in the Government's best interest. A copy of the debriefing Memorandum is also attached, at "B.

PLI then filed a timely protest with the GAO, docketed as B-540190. The protest raised Two (2) issues; first that Spika's proposal was not offering a "commercial, non-developmental" item and, hence, should not have received a rating of "Very Good" for the technical evaluation factor. PLI's second protest ground, was that given its proven products and prior experience delivering the same platforms (including to the same agency), it should here received a technical rating higher than "Good."

Following its receipt of the Agency Report, PLI submitted its response on November 14. In its response, PLI expanded upon its arguments concerning Spika's failure to offer a "commercial, non-developmental" item, based on

information in the Agency Report. It also expanded upon its argument that PLI should have received a technical rating higher than have received a technical rating higher than "Very Good." PLI also raised a third issue (which it included as a Supplemental Protest), namely that the rating of "Low Risk" for Spika's Past Performance was unreasonable, given the lack of any information in Spika's proposal on which such a rating could be based.

Following the submission of PLI's comments, the Agency advised that it would take corrective action. According to the then contracting officer's 21 November letter:

> [The Agency] intends to re-evaluate past performance, without conducting discussions, and conduct further research on the issue of whether the awardee's offer contains commercial non-developmental items we will make a subsequent award determination based on these findings.

See Exhibit "C" attached hereto (emphasis supplied).

By letter dated March 31, 2008, PLI was advised that the new contracting officer had determined that Spika's proposal "remains the overall best value to the Government." A copy is attached as Exhibit "D" hereto. PLI has requested a debriefing, as it was offered in the Contracting Officer's March 31 letter. See Exhibit "E." However, the Contracting Officer has so far not provided the debriefing nor offered PLI a firm date for it. See Exhibits "F" and "G" attached.

## II. Discussion

The instant protest challenges the Agency's decision to confirm the contract award arising from the Solicitation to Spika at a price higher than that offered by PLI. First, PLI does not believe that Spika's proposal, as of the date submitted, offered a "commercial, non-developmental item," at least as required by the Solicitation.[1] Second, PLI challenges the technical ratings in the reevaluation, as follows:[2]

1) PLI should have received a rating of at least "Very

---

[1] Since the Agency chose to re-evaluate proposals without discussions, proposals could not be revised. See FAR 15.307(b). Thus, whether Spika's platforms meet the requirements of the Solicitation should be determined based on its original proposal.

[2] For the purposes of the protest, PLI assumes that the Agency re-evaluation has not resulted in any change in ratings.

Good" for the Past Performance evaluation factor;

2) Spika should not have received a rating of "low risk" for the Past Performance evaluation factor; and

Finally, based on the erroneous technical evaluation, the source selection decision (i.e., awarding to Spika at a higher price) was unreasonable.

## A. PLI Is Filing The Instant Protest Prior To Receiving A Debriefing.

PLI recognizes that GAO considers a protest submitted prior to a debriefing to be premature. See 4 CFR § 21.2(a)(2). However, in the instant situation PLI fee's compelled to submit the protest within TEN (10) Days of the March 31 Notification from the Contracting Officer. While the original corrective action letter promised a "subsequent award determination," the Contracting Officer's March 31 letter makes no reference to an award determination. Rather, it merely states that the original determination that Spika's proposal represented "Best Value" to the Agency has been confirmed and the Stop Work Order" lifted. Thus, while the Contracting Officer's March 31 letter offered PLI a debriefing, PLI is unsure as to whether the debriefing would be a "required" one. Thus, out of an abundance of caution, this protest is being submitted within TEN (10) DAYS of the March 31 notification.

## B. Spika's Proposal Failed To Offer A "Commercial, Non-Developmental" Item.

PLI would first point out that the requirements for an offeror's platforms were set forth in a "Performance Specification" (as opposed to a design specification). See Solicitation, pages 3-5. Therein, under "Definitions," the Performance Specification states:

> MINIMUM PERFORMANCE STANDARDS (MPS) <u>Mandatory</u> capabilities that are required to be offered in the candidate platform. Minimum Performance Standards <u>shall not be traded</u> against other technical or non-technical requirements in the offeror's proposal.

(emphasis supplied)

PLI would note that the "Minimum Performance Standards (MPS)" are "mandatory capabilities" to be offered "in <u>the candidate platform</u>" (emphasis

supplied). The Performance Specification then provides, in pertinent part, under the heading "Construction," the following MPS for "the candidate platform:"

> The portable maintenance platform shall be a commercial non-developmental item. . . .

PLI would respectfully point out that the Performance Specification does not say that the candidate platform, "shall [utilize] a commercial non-developmental design."

Were that description not clear enough, the Agency clarified the requirement in Amendment 0002, which included the following question/answer:

1. "Are you [i.e., the Agency] referencing previously designed <u>and in use</u> full wrap around phase depot level maintenance platforms?"

   Yes.

PLI questions how much clearer the requirement could have been stated? The candidate platform must have been previously designed "<u>and</u> <u>in</u> <u>use</u>" (emphasis supplied). If the Agency truly meant only that the candidate platform copy a previous design, it would have clearly stated so in response to that question.

PLI would respectfully refer the GAO to its decision in <u>Chant Engineering Co.</u>, Comp. Gen. B-281521, 99-1 CPD ¶45 (1999). In that situation, the protester, a supplier of hydraulic test stands, had proposed to fabricate a product which met the requirements of the solicitation's performance specification. In denying the offeror's protest, the GAO stated:

> Chant's proposal provides no evidence that its proposed test station has at been least offered for sale, lease, or license to the general public or that it otherwise complies with the FAR § 52.202-1(c) definition of "commercial item." Instead of offering "commercial off the shelf equipment," Chant is merely offering to fabricate, for the first time after award, a customized test station in compliance with the specification. . . . Thus, it is apparent from Chant's proposal that its proposed test station is not based on any existing, commercially available model. . . .
>
> One of the purposes of a solicitation requirement for a commercial product is to avoid the design and engineering risks

> associated with new equipment by procuring a commercially proven item. New equipment like Chant's proposed test station, which may only become commercially available as a result of the instant procurement, clearly does not satisfy the RFP requirement for commercial off-the-shelf (existing) equipment.

99-1 CPD ¶ 45, at 4 (footnote and citations omitted).

Nor could general statements by Spika that its platforms are commercial, non-developmental items suffice. PLI would refer the GAO to its decision in National Shower Express, Inc. Rickaby Fire Support, B-293970; B-293970.2, 2004 CPD ¶ 140 (2004), wherein the GAO stated (on page 6) in denying a protest by an offeror against the elimination of its proposal from competition:

> National Shower asserts that because its proposal generally stated that its equipment complied with all the requirements, and it submitted the checklist with all of the requirements marked "pass," it proposal demonstrated compliance with all of the requirements. We disagree. It is the offeror's responsibility to include sufficiently detailed information in its proposal to establish that the item offered will meet material solicitation requirements, and blanket statements of compliance are insufficient to fulfill this obligation. [citation omitted] Furthermore, National Shower's general statements of compliance were insufficient to comply with the solicitation's requirement for specific information which the agency deemed necessary for evaluating the technical acceptability of proposals. See Johnson Controls, Inc. B-282326, June 28, 1999, 99-2 CPD ¶ 6 at 5-6; Benton Corp., B-249091, Oct. 21, 1992, 92-2 CPD ¶ 264 at 4.

In short, based on PLI's knowledge of the industry, as well as the information provided to PLI's counsel in the Agency Report in connection with PLI's original protest, PLI asserts Spika's proposal failed to offer platforms meeting the requirement for a "commercial, non-developmental item" – a requirement which was not subject to technical tradeoff. Spika's proposal was, therefore, technically unacceptable and could not form the basis for an award. Outdoor Venture Corp., B-288894.2, 2002 CPD ¶ 13 at 2-3; Team One USA, Inc., B-272382, 96-2 CPD ¶ 120 at 8 (1996).

**C. PLI's Proposal Should Have Received A Rating Of "Very Good" For The "Technical" Evaluation Factor**

The second element of PLI's protest challenges the assignment of a Technical rating of "Good" versus the ratings of "Very Good" assigned to Spika's proposal. Based on a reviewed of the Memorandum supporting the Technical ratings, it is clear that there was no meaningful analysis in the assignment of the ratings. As noted above, the solicitation provided as follows with respect to the Technical evaluation factor:

> **Technical**. The contractor must address the Safety, Performance, and Construction, and Design Specification [sic] aspects of the Performance Specification in this solicitation.

(emphasis supplied). Also as noted above, the adjectival ratings were described as follows:

Technical Quality Scale:

| RATING | DESCRIPTION |
|---|---|
| Very Good | Offeror's proposal demonstrates a very good understanding of the requirements and the approach is of good quality. Strengths clearly outbalance any weaknesses that exist. There are no deficiencies. |
| Good | Offeror's proposal demonstrates an acceptable understanding of the requirements and the approach is of good quality. There may be strengths or weaknesses and the strengths balance the weaknesses. No deficiencies exist. |
| Unsatisfactory | Offeror's proposal does not demonstrate an understanding of the requirements and the approach is of unsatisfactory quality. Weaknesses or deficiencies out weigh the strengths. |

Your office has stated repeatedly that agencies are free to select any type of evaluation plan in a "Best Value" procurement. However once a plan is announced in a solicitation, that plan must be adhered to or offerors must be informed of changes. Sikorsky Aircraft Company; Lockheed Martin Systems Integration – Oswego, B-299145, B-299143.2; 299145.3, 2007 CPD ¶ 45 at page 4 (2007). While GAO has also often stated that it is not GAO's role to reevaluate proposals; in order for a meaningful review by GAO, however, the record must

contain adequate documentation showing the bases for evaluation conclusions and the source selection decision. Panacea Consulting, Inc. B-299307.4; B-299308.4, 2007 CPD ¶ 141 at 3-4; Intercon Associates, Inc., B-298282; B-298282.2, 2006 CPD ¶ 121 at 3.

In the instant situation, PLI's proposal, unlike Spika's proposal, specifically listed the same Platforms it has delivered to various civilian and military customers, including the Agency, over the past several years. In other words, unlike SPIKA, PLI offered "commercial, non-developmental items." Moreover, as stated, supra, PLI has delivered over THREE HUNDRED AND FIFTY (350) Platforms similar or identical to the ones being purchased under the Solicitation all of which met or exceeded the requirements of the Performance Specification. Clearly, PLI's proposal should have received a rating of "Very Good."

**D. Spika's Proposal Should Not Have Received A Rating Of "Low Risk" For The "Past Performance" Evaluation Factor**

PLI's protest also challenges the Agency's assignment of a rating of "low risk" to Spika for the past performance evaluation factor – the same rating as was assigned to PLI.

As was noted, supra, the Solicitation provided as follows with respect to the past performance evaluation factor:

> **Past Performance.** Past Performance on contracts currently ongoing or completed within the last five years that are directly similar in scope and complexity of the performance specifications. Each offeror will be evaluated on its performance under existing and prior contracts for similar products or services. Evaluation will not be based on an absolute standard of performance. The government reserves the right to consider all aspects of an offeror's performance history, but will attribute more significance to recent work comparable in scope to this solicitation.

In response, PLI provided, in Part III of its proposal, a detailed narrative as well as a specific listing of FIVE (5) contracts, with contract numbers, dates of award, specific points of contact. PLI believes that as of the date of the offers, Spika had not performed any contracts that could qualify as "similar in scope and complexity" to the performance specification in this instance.

Unlike PLI, Spika has never manufactured the required platforms or any similar items under a mass production contract. As such, it could not have received a rating of "low risk" for the Past Performance evaluation factor.

**E. Source Selection Decision**

Finally, PLI protests the Agency's source selection decision to award the Contract to Spika at a price higher than that offered by PLI, since that decision was based on the flawed technical analysis.

**III. Conclusion**

For all the forgoing reasons, Precision Lift, Inc. requests that its protest be sustained and the Agency be directed to perform a new evaluation that complies with the requirements of the Solicitation. It also requests that it be awarded the costs of pursuing this protest.

Respectfully submitted,

**Marc Lamer**
Attorney for Precision Lift, Inc.

ML:jdr

NGB-ZC-AQ

24 September 2007

MEMORANDUM FOR RECORD

Subject: Notification of Award of Contract for Fall Protection Platforms W9133L-07-T-0033

Dear John Tollenaere (Precision Lift),

Thank you for your interest in the above referenced project for the National Guard Bureau. Your proposal was considered but was not selected for award. Award has been made to Spika Welding and Manufacturing, 2035 Curley Road, Moccasin, MT 59462. The award amount is $2,704,000.00.

In accordance with FAR 15.506, you may request a post award debriefing by submitting a written request along with your questions for debriefing to CPT Theresa Glasgow within 3 days after receipt of this notice. Debriefings may be done orally or in writing, or any other method acceptable to the Contracting Officer. For this award the Contracting Officer has elected to use the written method for these Debriefings. Again, when you request a debriefing please include all your questions.

At a minimum, the debriefing information shall include – (1) The Government's evaluation of the significant weaknesses or deficiencies in the offeror's proposal, if applicable; (2) The overall evaluated cost or price (including unit prices), and technical rating, if applicable, of the successful offeror and the debriefed offeror, and past performance information on the debriefed offeror; (3) A summary of the rationale for award; (4) Reasonable responses to relevant questions about whether source selection procedures contain in the solicitation, applicable regulations, and other applicable authorities were followed.

The debriefing shall not include point-by-point comparisons of the debriefed offeror's proposal with those of other offerors. Moreover, the debriefing shall not reveal any information prohibited from disclosure by FAR 24.202 or exempt form release under the Freedom of Information Act (5 U.S.C. 552) including – (1) Trade secrets; (2) Privileged or confidential manufacturing processes and techniques; (3) Commercial and financial information that is privileged or confidential, including cost breakdowns, profit, indirect cost rates, and similar information; and (4) The names of individuals providing reference information about an offeror's past performance.

THERESA M GLASGOW
CPT, NGB
Contracting Officer

A

# DEPARTMENTS OF THE ARMY AND AIR FORCE

NATIONAL GUARD BUREAU
1411 JEFFERSON DAVIS HIGHWAY
ARLINGTON, VA 22202-3231

REPLY TO
ATTENTION OF

NGB-ZC-AQ 1 October 2007

Mr. John Tollenaere
130 South Oak Pointe Drive
Seneca, SC 29672

Dear Mr. Tollenaere:

Reference:

1. MEMORANDUM FOR RECORD: Subject: Notification of Award of Contract for Fall Protection Platforms W9133l-07-T-0033; dated 24 September 2007; signed by Theresa M Glasgow, CPT, NGB, Contracting Officer

2. Letter, Precision Lift, Inc, Subject: W9133L-07-T-0033 Request for Debriefing, dated 25 September 2007; signed by John Tollenaere, President

In accordance with Federal Acquisition Regulation (FAR) 15.506 (d) and reference 2 above the following information is provided.

(1) The government's evaluation of the proposal submitted by Precision Lift did not contain any significant weaknesses or deficiencies. The proposal submitted by Precision Lift did not contain any weaknesses or deficiencies, significant or otherwise.

(2) The overall evaluated price (including unit prices), and technical rating, if applicable, of the successful offeror and the debriefed offeror, and past performance information on the debriefed offeror.

2.1 The overall evaluated price (including unit prices) of the successful offeror (Spika) and Precision Lift

| ITEM NO. | Supplies/Services | Spika Unit Cost | Spika Total Amount | Precision Lift Basic Price Total Amount |
|---|---|---|---|---|
| | Fall Protection Maintenance Platform System per the Performance Specification | | | |
| 0001 | CH-47 | $150,000. | $1,050,000. | $988,132 |
| 0002 | UH-60 | $86,000 | $946,000. | $865,592 |
| 0003 | UH-60 Tail Sections | $39,000 | $156,000 | $164,665 |
| 0004 | AH-64 | $69,000 | $552,000 | $607,135 |
| | **TOTAL** | $344,000.00 | $2,704,000.00 | $2,625,524 |



B

Subject: Debriefing for Precision Lift Enterprises, LLC

2.2 The technical rating of the successful offeror (Spika) was Very Good and the technical rating of Precision Lift was Good. The past performance risk assessment for the successful offeror (Spike) was Low Risk and the past performance risk assessment for Precision Lift was Low Risk.

2.3 No overall ranking of the offerors was developed during source selection by the agency.

2.4 Your proposal was determined to be in the competitive range however; it was not selected for award. The platforms proposed by Spika exceeded requirement utilizing an advanced interlocking alignment pin system which was determined to provide greater strength, support and safety than that proposed by Fernandez. The Performance Specification definitions sated that "Threshold capabilities <u>may be traded</u> against other technical and non-technical requirements..." In analyzing the tradeoff of the additional cost to the government against the benefit of this interlocking alignment pin system it was determined to be in the government's best interest to make the award to Spika.

2.5 The make and model numbers of the items to be delivered by the successful offeror as shown in the design drawings contain Proprietary and Confidential markings and cannot be released by the government.

Your letter referenced in 2 above contained some very specific questions which are addressed below:

1) The solicitation specified that the design specifications would be used in the technical evaluation of the Performance Specification.

2) An evaluation of the design indicates the measurement specifications comply with the Performance Specification.

3) A documented Finite Element Analysis was not a requirement of the technical evaluation as the platforms are required to build to OHSA standards.

4) Positive: LW Aluminum materials outlined in the design exceed the minimum load bearing and tensile strengths required. Negatives: None noted

5) The scoring rationale used for the technical proposal was as shown in the solicitation.

6) Offeror's comparison indicated extruded LW Aluminum extended to be used for planking; creating a non-skid **High strength-to-weight ratio**, result is a very strong part with relatively low weight. 10 inch casters to be used instead of 6 inch casters. Cranks are designed specifically for the stands versus boat trailer cranks.

7) The scoring rationale used for the past performance evaluation was as shown in the solicitation

8) There were no added value allowances from any offeror considered outside of the solicitation requirements.

9) The GSA Federal Supply Schedules are considered to be "optional" for the DOD. The procedures that were followed to make the decision as to whether to use the FSS's or not were in compliance with FAR 8.4 and DFARS 8.4. That is unless there is an adequate justification for a sole source acquisition, contracting officers must consider reasonably available information by reviewing at least three schedule contractors.

Subject: Debriefing for Precision Lift Enterprises, LLC

10) Subject solicitation was awarded to Spika Welding & Mfg on 15 September 2007.

I appreciate your effort in responding to our proposal and encourage you to submit proposals on future National Guard bureau requirements.

If you have any questions, please contact me at 703-607-1267 or Theresa.glasgow@ngb.ang.af.mil

Sincerely,

THERESA M. GLASGOW
CPT, NGB
Contracting Officer

**DEPARTMENTS OF THE ARMY AND AIR FORCE**
NATIONAL GUARD BUREAU
1411 JEFFERSON DAVIS HIGHWAY
ARLINGTON, VA 22202-3231

21 November 2007

FROM: National Guard Bureau (CPT Glasgow)

MEMORANDUM FOR: CPT Robert B. Nelson,
HQ, US Army Legal Services,
Contract and Fiscal Law Division, Team III,
901 North Stuart Street, Suite 500,
Arlington, VA 22203

SUBJECT: Agency Response to Protest of Precision Lift Inc., B-310540

1. This memorandum is to inform you that I intend to take corrective action in response to the Government Accountability Office (GAO) protest of Precision Lift Inc, (PLI) concerning Solicitation W9133L-07-T-0033.

2. In response to PLI's protest, NGB intends to re-evaluate past performance, without conducting discussions, and conduct further research on the issue of whether the awardee's offer contains commercial non-developmental items. We will make a subsequent award determination based on these findings. If the new evaluation results in award to someone other than the current awardee, then NGB will terminate the current contract for convenience.

2. POC is the undersigned at (703) 607-1267.

THERESA M. GLASGOW
CPT, NGB
Contracting Officer

**Marc Lamer**

**From:** "Staresina, Patrick R MAJ - NGB-ZC-AQ" <patrick.staresina@us.army.mil>
**To:** <ghilewitz@precisionliftinc.com>
**Cc:** <kostos_lamer@msn.com>; "Butler, Edward "Patrick" CPT - JA" <Edward.Butler2@ng.army.mil>; "Staresina, Patrick R MAJ - NGB-ZC-AQ" <patrick.staresina@us.army.mil>; "McHenry, Kathryn E. LTC - Division Chief, Operational Contracting, NGB-ZC-AQ" <Kathryn.mchenry@us.army.mil>
**Sent:** Monday, March 31, 2008 7:50 PM
**Attach:** Notice of Findings - Fall Protection Platforms.pdf
**Subject:** Notice of Findings - Aviation Fall Protection Platforms (UNCLASSIFIED)

assification: UNCLASSIFIED
aveats: FOUO

eference GAO Protest B-310540, please see the enclosed notice of findings
r the re-evaluation of the offers received in response to solicitation
'9133L-07-T-0033.

AJ Patrick Staresina

hief, Army Contracting Branch
perational Contracting
ational Guard Bureau
Classification: UNCLASSIFIED
aveats: FOUO

D

**DEPARTMENTS OF THE ARMY AND AIR FORCE**
NATIONAL GUARD BUREAU
1411 JEFFERSON DAVIS HIGHWAY
ARLINGTON, VA 22202-3231

March 31, 2008

**REPLY TO
ATTENTION OF**
NGB-ZC-AQ

Precision Lift, Inc.
130 South Oak Point Drive
Seneca, SC 29672

Reference GAO Protest B-310540, the Government has now completed its corrective actions listed in the Memorandum dated 21 November 2007, and has conducted a re-evaluation of past performance of offers received in response to Solicitation W9133L-07-T-0033. Additionally, we have conducted an analysis of the technical evaluation of Spika Welding's proposal and the requirement for commercial non-developmental items.

Based on my integrated reassessment of all the proposals in accordance with the solicitation, I have determined that the offer submitted by Spika Welding and Manufacturing, Inc. remains the overall best value to the Government. As such, I have lifted the Work Suspension order today on Contract W9133L-07-P-0205 and issued a notice to proceed to Spika Welding and Manufacturing, Inc.

Since corrective action was taken and a re-evaluation was performed, I feel that PLI is fully entitled to a new debriefing in accordance with FAR 15.506. If you wish to receive a new debriefing, a written request must be received by the agency within 3 days after receipt of this notification. In accordance with FAR 15.506(b), debriefings of successful and unsuccessful offerors may be done orally, in writing, or by any other method acceptable to the contracting officer. In this case, I will provide a written debriefing.

Again, I would like to thank you for your participation in this solicitation and encourage you to continue to participate in other National Guard requirements in the future.

Sincerely,

Patrick R. Staresina
Major, National Guard Bureau
Contracting Officer

Precision Lift, Inc.

April 1, 2008

Chief, National Guard Bureau (NGB-ZC-AQ)
Attn: MAJ Patrick Staresina
1411 Jefferson Davis Highway, Suite 8100
Arlington, VA 22202-3231

Subject: W9133L-07-T-0033 Request for Debriefing

Dear MAJ Staresina:

Precision Lift, Inc. ("PLI") hereby requests a post-award debriefing in connection with the re-evaluation of a contract arising from the subject procurement to Spike Welding and Manufacturing, Inc. PLI submits that this request is timely, as it has received your March 31, 2008 letter of re-evaluation contract award, and requests that we receive the debriefing as soon as possible.

Questions:

1) What were the definitive positives and negatives between the PLI proposed platforms when measured against required specifications?
2) What part did a product design having a long standing proven delivery record (over 200 standardized design, safety proven maintenance platforms) to the National Guard and Army play into the technical evaluation over a competitor who has yet to produce and deliver a platform as of the proposal dates?
3) For offeror's designs not currently delivered, how did the evaluation of offeror's unfielded (prototype) designs assure that the platforms would actually fit the aircraft and provide the functionality required of the performance specifications?
4) What role did a documented Finite Element Analysis play in the technical evaluation and how much weight was given to it?
5) What evaluation criteria within the technical evaluation was applied to OSHA compliance? How did the government determine OSHA compliance of the offeror's platforms?
6) Was any critical comparison information or statements submitted by any offerors (e.g."... as compared to currently fielded platforms/products") and how was it related?
7) What was the specific scoring rational used for the past performance evaluation?
8) In past performance, was being a prime contractor versus a subcontractor or vendor given any consideration? How was that consideration evaluated and scored?

*130 South Oak Pointe Dr. Seneca, SC 29672 - Tel: 864-985-0804 - Fax: 864-985-0881*
*Email: jtollenaere@precisionliftinc.com - Website: www.precisionliftinc.com*

E

9) If an offeror was a subcontractor, was the prime contractor contacted to determine deliverables and past performance in regard to that contract?

10) How were specific deliverables within each past performance contract referenced in the proposals determined to be relevant to the solicitation?

Kindly contact the undersigned at your earliest convenience to set the date and time for the debriefing.

Sincerely,

John Tollenaere
President

*130 South Oak Pointe Dr. Seneca, SC 29672 - Tel: 864-985-0804 - Fax: 864-985-0881*
*Email: jtollenaere@precisionliftinc.com - Website: www.precisionliftinc.com*

-----Original Message-----
From: Staresina, Patrick R MAJ - NGB-ZC-AQ
[mailto:patrick.staresina@us.army.mil]
Sent: Thursday, April 03, 2008 12:52 PM
To: jtollenaere@precisionliftinc.com
Cc: Staresina, Patrick R MAJ - NGB-ZC-AQ
Subject: Request for Debrief (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Mr. Tollenaere,

My name is MAJ Pat Staresina and I am the branch chief for the Army Contracting Team here at National Guard Bureau.

I just wanted to let you know that I am personally handling all issues associated with the recent requirement for ARNG Aviation Fall Protection Platforms. Specifically, I wanted to confirm to you that I have received your faxed request for debrief and subsequent list of questions.

I am currently away from the office this week on temporary duty but intend to
respond your request as soon as I return on Monday. Since several your questions are technical in nature, it may take me a couple days to provide complete answers, but I do intend to make this a top priority.

Regardless, I just wanted to coordinate with you on this issue and provide a status.

Regards,
MAJ Staresina
Contracting Officer
Classification: UNCLASSIFIED
Caveats: NONE

**Marc Lamer**

**From:** "Staresina, Patrick R MAJ - NGB-ZC-AQ" <patrick.staresina@us.army.mil>
**To:** <jtollenaere@precisionliftinc.com>
**Cc:** "Marc Lamer" <kostos_lamer@msn.com>; "Butler, Edward "Patrick" CPT - JA" <Edward.Butler2@ng.army.mil>; "Staresina, Patrick R MAJ - NGB-ZC-AQ" <patrick.staresina@us.army.mil>
**Sent:** Tuesday, April 08, 2008 12:40 PM
**Subject:** RE: Request for Debrief (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Mr. Tollenaere

I am back in the office and currently drafting our debrief response. Since your questions are technical and very specific, additional coordination is required to adequately respond. I hope to have the final response to you this week.

MAJ Staresina

Major Patrick Staresina
Chief, Army Contracting Branch (Acting)
National Guard Bureau (NGB-ZC-AQ)
1411 Jefferson Davis Highway
Arlington, VA 22202

703-607-2089
DSN: 327-2089
fax: 703-607-1742

-----Original Message-----
From: John Tollenaere [mailto:jtollenaere@precisionliftinc.com]
Sent: Tuesday, April 08, 2008 9:09 AM
To: Staresina, Patrick R MAJ - NGB-ZC-AQ
Cc: 'Marc Lamer'
Subject: FW: Request for Debrief (UNCLASSIFIED)

Major Staresina,

Good morning. Do you have an update as to when the answers to our debrief request will be available?

Regards

John Tollenaere, President
Precision Lift, Inc.
864.985.0804 Office
864 985 0881 Fax
864.723.2223 Cell
jtollenaere@precisionliftinc.com
www.precisionliftinc.com

G