**DEPARTMENTS OF THE ARMY AND AIR FORCE**
NATIONAL GUARD BUREAU
1411 JEFFERSON DAVIS HIGHWAY
ARLINGTON, VA 22202-3231

April 11, 2008

REPLY TO
ATTENTION OF
NGB-AQ

Precision Lift, Inc.
130 South Oak Point Dr.
Seneca, SC 29672

Dear Mr. Tollenaere:

This debriefing is provided in response to a request dated 1 April 2008 for Solicitation W9133L-07-T-0033 from Precision Lift, Inc.

Per FAR 15.506, at a minimum, the debriefing information shall include—

(1) The Government's evaluation of the significant weaknesses or deficiencies in the offeror's proposal, if applicable;

(2) The overall evaluated cost or price (including unit prices) and technical rating, if applicable, of the successful offeror and the debriefed offeror, and past performance information on the debriefed offeror;

(3) The overall ranking of all offerors, when any ranking was developed by the agency during the source selection;

(4) A summary of the rationale for award;

(5) For acquisitions of commercial items, the make and model of the item to be delivered by the successful offeror; and

(6) Reasonable responses to relevant questions about whether source selection procedures contained in the solicitation, applicable regulations, and other applicable authorities were followed.

The debriefing shall not include point-by-point comparisons of the debriefed offeror's proposal with those of other offerors. Moreover, the debriefing shall not reveal any information prohibited from disclosure by 24.202 or exempt from release under the Freedom of Information Act (5 U.S.C. 552) including—

(1) Trade secrets;

(2) Privileged or confidential manufacturing processes and techniques;

(3) Commercial and financial information that is privileged or confidential, including cost breakdowns, profit, indirect cost rates, and similar information; and

(4) The names of individuals providing reference information about an offeror's past performance.

PLAINTIFF'S EXHIBIT
tabbies
O

Below is the formal debriefing as prescribed above.

**PLI's Significant weaknesses or deficiencies.** There were no "significant weaknesses or deficiencies" noted in PLI's proposal. However, there were some "weaknesses" in PLI's proposal. The solicitation set out minimum performance specifications as well as "[t]hreshold capabilities that should be offered in the candidate platform in order to satisfy the end-user's requirements for safety, effectiveness, and suitability of the platform." For example, under the performance specification labeled "Safety," the solicitation stated "the platform should have an integral fire extinguisher." The evaluator noted that there was no acknowledgment of this requirement in PLI's proposal. Furthermore, that same section of the solicitation included a desired threshold capability that "the platform should have an integral grounding cable." The evaluator noted that there was no acknowledgment of this requirement in PLI's proposal.

**Cost and Technical Ratings:**

| | Technical Rating | Past Performance | Cost |
|---|---|---|---|
| Precision Lift, Inc. | Good | Low Risk | $2,625,524.00 |
| Spika Welding (Successful Offeror) | Very Good | Low Risk | $2,704,000.00 |

**Ranking of Offerors.** No rankings were assigned to offerors of this solicitation.

**Rational for Award.** The contract award was based on an integrated assessment of each offeror's response to the solicitation. The factors evaluated in this competition were as follows: (1) Technical; (2) Past Performance; & (3) Price. The Technical area was considered to be more important than the Past Performance and Price. The non-price factors when combined were significantly more important than price.

Based on my integrated assessment of the proposals in accordance with the solicitation, the Government determined that Spika's proposal was technically superiorior to PLI's technical proposal. The Government determined that Spika's proposal merited a "Very Good" rating under the technical factor, while PLI received a "Good." Secondly, the Government determined that the past performance risk between PLI and Spika were essentially equal. They were both determined to be "Low Risk." PLI's proposal was $78,476.00 less expensive than Spika's proposal. Therefore the SSA conducet a tradeoff. Ultimaltely, Spika's superior technical proposal was determined to outweigh the lower price offered by PLI. It is my decision that Spika Welding and Manufacturing Inc. offers the overall best value to the Government and was selected for contract award. Making this award meets the requirements of FAR Part 15 and acquires the best value for the Government.

**Commercial Items Offered by the Successful Offeror.**

AH64 Apache Complete System
UH60 Blackhawk Complete System
CH47 Chinook Complete System

**Reasonable Responses to Relevant Questions:**

**QUESTION 1.** What were the definitive positives and negatives between the PLI proposed platforms when measured against required specifications?

**RESPONSE 1:** When measured against the solicitation's specifications, PLI's proposal met all of the minimum performance standards. There were no "significant weaknesses or deficiencies" noted in PLI's proposal. However, the solicitation also set out "Threshold Capabilities that should be offered in the candidate platform in order to satisfy the end-user's requirements for safety, effectiveness, and suitability of the platform." For example, under the performance specification labeled "Safety," the solicitation stated "the platform should have an integral fire extinguisher." The evaluator noted that there was no acknowledgment of this requirement in PLI's proposal. Furthermore, that same section of the solicitation included a desired threshold capability that "the platform should have an integral grounding cable." The evaluator noted that there was no acknowledgment of this threshold capability in PLI's proposal.

**QUESTION 2.** What part did a product design having a long standing proven delivery record (over 200 standardized design, safety proven maintenance platforms) to the National Guard and Army play into the technical evaluation over a competitor who has yet to produce and deliver a platform as of the proposed dates?

**RESPONSE 2:** As a preliminary matter, the Government evaluated all proposals against the standards set out in solicitation W9133L-07-T-0033 in accordance with applicable law and regulation. FAR 15.303(b)(4) states that the Source Selection Authority shall, "ensure that proposals are evaluated based solely on the factors ... contained in the solicitation." This question seems to conflate the past performance factor with the technical factor. The question implies that the Government should have used different evaluation criteria than what was set forth in the solicitation. Contrary to that implication, the Government was bound to evaluate the proposals in strict conformance with the solicitation. As stated in the "evaluation criteria" set out in the solicitation, a "Very Good" rating meant that the proposal *"demonstrates a very good understanding of the requirements and approach is of good quality. Strengths clearly outbalance any weaknesses that exist. There are no deficiencies."* Based on the Government's evaluation of the awardee's technical proposal, the Government determined that the awardee's technical proposal was "Very Good," which was superior to the "Good" rating received by PLI. PLI's past performance, upon which this question seems to be largely focused, was considered to be "low risk." PLI was given credit for its past performance and, as noted in the evaluation, PLI's previously delivered platforms were deemed to be "of very good quality."

**QUESTION 3.** For offeror's designs not currently delivered, how did the evaluation of the offeror's unfielded (prototype) designs assure that the platforms would actually fit the aircraft and provide the functionality required of the performance specifications?

**RESPONSE 3:** As a preliminary matter, the Government evaluated all proposals against the standards set out in solicitation W9133L-07-T-0033 in accordance with applicable law and regulation. The Government disagrees with PLI's characterization of the awardee's proposal. The awardee's platforms are commercial items with minor modifications from standard

commercial platform designs. The Government was satisfied that the awardee's proposed platforms would not only "fit the aircraft and provide the functionality required" by the contract, but also that the awardee's technical proposal was "Very Good" as that term was defined in the solicitation.

**QUESTION 4.** What role did a documented Finite Element Analysis play in the technical evaluation and how much weight was given to it?

**RESPONSE 4:** The Government is not aware of any requirement to perform or consider a "Finite Element Analysis" as implied in PLI's question.

**QUESTION 5.** What evaluation criteria within the technical evaluation was applied to OSHA compliance? How did the government determine OSHA compliance of the offeror's platforms?

**RESPONSE 5:** The Government did evaluate the offerors' proposals to ensure that they demonstrated an understanding of the OSHA requirements as set forth in the solicitation. The Government evaluated the proposals OSHA compliance by comparing the solicitation to the information provided by the offerors' in their proposals.

**QUESTION 6.** Was any critical comparison information or statements submitted by any offerors (e.g." … as compared to currently fielded platforms/products") and how was it related?

**RESPONSE 6:** The Government evaluated all proposals against the standards set out in solicitation W9133L-07-T-0033 in accordance with applicable law and regulation. After reading this question multiple times, the Government does not understand the question. As a result, the Government is not able to provide a specific answer to this question. If the question is asking whether or not the Government considered an offeror's comments about a competing offeror's proposal/products in the evaluation, the answer is no.

**QUESTION 7.** What was the specific scoring rational used for the past performance evaluation?

**RESPONSE 7:** Past performance was evaluated in accordance with the language included in Solicitation W9133L-07-T-0077. The following is the assessment scale that was used in evaluating past performance.

Past Performance Risk Assessment Scale:

| ASSESSMENT | ASSESSMENT DESCRIPTION |
|---|---|
| Low Risk | The past work and experience is mostly high quality and relevant. There is a high probability of success that the offeror should be able to execute the work based upon previous performance. |
| Moderate Risk | The quality and relevance of the past work and experience is mixed. There is moderate probability of success that the offeror will be able to execute the work based upon previous performance |

| ASSESSMENT | ASSESSMENT DESCRIPTION |
|---|---|
| High Risk | The past work and experience is below average to poor quality and/or past work and experience is not particularly relevant. There is a moderate to high probability that the offeror will be unable to execute successfully the work based upon previous performance. |
| Unknown | The past work and experience, if any, is not relevant to the solicitation's objectives and requirements. |

**QUESTION 8:** In past performance, was being a prime contractor versus a subcontractor or vendor given any consideration? How was that consideration evaluated and scored?

**RESPONSE 8:** In this source selection, the Government considered those past-performance references that were provided by the POC's listed in the individual proposals. The solicitation does not make any distinction between work performed as a subcontractor as opposed to work performed as a prime contractor. Rather, the solicitation stated:

> Past performance on contracts currently ongoing or completed within the last five years that are directly similar in scope and complexity of the performance specifications. Each offeror will be evaluated on its performance under existing and prior contracts for similar products or services. Evaluation will not be based on an absolute standard of performance. The government reserves the right to consider all aspects of an offeror's performance history, but will attribute more significance to recent work comparable in scope to this solicitation.

The Government adhered to the evaluation criteria as set out in the solicitation.

**QUESTION 9:** If an offeror was a subcontractor, was the prime contractor contacted to determine if deliverables and past performance in regard to that contract?

**RESPONSE 9:** The Government evaluated all proposals against the standards set out in solicitation W9133L-07-T-0033 in accordance with applicable law and regulation. The Government assumes that this question is basically asking why the Government did not seek a past performance evaluation of the awardee from PLI. In this competition, it is clear that PLI and the awardee are competitors. As such, the Government did not believe it was good practice to seek this type of evaluation in light of the glaring conflict of interest inherent in such a situation. Furthermore, the POC's that were contracted were all customers. Therefore, to the extent that PLI is asking this question from a general perspective, the answer is also no.

**QUESTION 10.** How were specific deliverables within each past performance contract referenced in the proposals determined to be relevant to the solicitation?

**RESPONSE 10**: The Government evaluators, to include the SSA, employed their judgment in determining whether or not an offeror's past performance was "directly similar in scope and complexity of the performance specifications."

Sincerely,

Patrick R. Staresina
Major, National Guard Bureau
Contracting Officer

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **PRECISION LIFT, INC.** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **No.** |
| **v.** | : | |
| | : | **JUDGE** |
| **THE UNITED STATES** | : | |
| | : | |
| **Defendant.** | : | |

## DECLARATION OF MARC LAMER

I, Marc Lamer declare under penalty of perjury, that the following is true and correct.

1. I am Counsel for Precision Lift, Inc. ("PLI").

2. In October of 2007 I filed a protest on PLI's behalf with the Government Accountability Office ("GAO"), challenging the decision by the U.S. Army National Guard Bureau ("ARNGB") to award the contract arising from Solicitation W9133L-07-R-0033 ("the Solicitation") to Spika Welding & Manufacturing, Inc. ("Spika").

3. The October, 2007 protest was docketed by the GAO as B-210540.

4. Among the issues raised in Protest B-310540 was whether Spika was offering a "commercial, non-developmental item," as required by the Solicitation's performance specification; Amendment 002 to the Solicitation has stated (in response to a question) that the ARNGB was requiring offerors to propose "previously designed and in use" platforms, and no Spika platforms of the type described in the performance specification are "in use" anywhere.

5. In response to Protest B-310540, the then Contracting Officer, Capt. Glascow, stated to the GAO that, of her personal knowledge, Spika had supplied these platforms as a subcontractor to PLI on a previous ARNGB contract.[1]

6. The Contracting officer's statement was, apparently, based on Spika having listed the previous PLI contract in the Past Performance portion of its proposal, thereby suggesting that Spika had, in fact, previously manufactured these platforms.

7. As part of its response to the Contracting Officer's submission, I submitted a sword declaration from PLI President, John Tollenaere, stating that, in fact, Spika had been a subcontractor to PLI, but had not manufactured the platforms; Spika had only produced trailers.

8. At that point the ARNGB advised GAO that it would take corrective action and determine whether Spika had offered complaint platforms; GAO then dismissed protest B-310540 as moot.

9. On March 31 the ARNGB confirmed the award to Spika and I refilled PLI's GAO protest; it was docketed this time as B-310540.2.

10. On the issue of "commercial, non-developmental item," the Contracting Officer asserted that the platforms Spika was offering were its "previously supplied platforms" with minor modifications, basing that conclusion on a post-award letter from Spika.[2]

11. I then submitted PLI's response in which I asserted that the letter on which the Contracting Officer relied to conclude that Spika was offering slightly modified versions

[1] Due to the GAO's issuance of a Protective Order, I cannot provide the Court with documents from the protest file or with unredacted copies of various submissions I made to GAO on PLI's behalf; I presume the Court will see the documents in the Administrative record.

[2] GAO again issued a protective order.

of platforms it had previously manufactured did not, in fact, say that Spika had previously supplied these types of platforms. A copy of the redacted version of PLI's May 16, 2008 submission to GAO is attached hereto, incorporated herein and marked, Exhibit "A."

12. The GAO then directed counsel for the ARNGB to ask Spika directly whether it had previously supplied these types of platforms.

13. The ARNGB attorney responded that Spika had not, in fact, produced these platforms previously; however its offered platforms still qualified as "commercial items" under the performance specification, because it had "marketed" these platforms to the general public by circulating brochures to potential customers; according to counsel this made the platforms "commercial items" under FAR 2.101 ("offered for sale to general public").

14. I responded by pointing out that it its e-mails circulating the brochures, Spika had only referred to them as "introductory information" and quoting the definition of "offer" in the <u>Restatement (Second) of Contracts</u>:

> §24 – OFFER DEFINED
>
> An offer is the manifestation of willingness to enter into a bargain made so as to justify another person in understanding that his assent to the bargain is invited and will conclude it.

15. I also reminded GAO of the response in Amendment 002 to the questions, "Are you referencing previously designed and <u>in use</u> . . . platforms," to which the ARNGB stated "Yes" (emphasis added). A copy of the redacted version of PLI's June 2 submission is attached hereto, incorporated herein and marked submission to GAO is attached hereto incorporated herein and marked Exhibit "B."

16. The GAO denied Protest B-310540.2 on June 26, holding that Spika had "offered" its platforms for sale (even though none had actually been sold), thereby making them commercial items under FAR 2.101, and thus compliant with the performance specification's requirement for a "commercial, non-developmental item."[3]

Signed under penalty of perjury this 9th day of July, 2008 at Philadelphia, Pennsylvania.

Marc Lamer

Marc Lamer

[3] GAO has not yet issued its decision for public release; it is still covered by the protective order.