# In the United States Court of Federal Claims

Case No. 08-500C
Filed Under Seal: September 9, 2008
Unsealed For Publication: September 24, 2008

* * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| **PRECISION LIFT, INC.,** | |
| *Plaintiffs*, | Post-Award Bid Protest; Responsibility Determination; Tucker Act; Contract Disputes Act; Summary Judgment on the Administrative Record; Commercial Item Definition; FAR 2.101 |
| v. | |
| **THE UNITED STATES**, | |
| *Defendant*. | |

* * * * * * * * * * * * * * * * * * * * *

*Marc Lamer*, Kostos & Lamer, Philadelphia, PA, for Plaintiffs.

*Scott T. Palmer*, Trial Attorney, with whom were *Gregory G. Katsas*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Brian M. Simkin*, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC. *Christine Choi*, Trial Attorney, Department of the Army, Arlington, VA, Of Counsel for Defendant.

## OPINION AND ORDER

**SMITH**, Senior Judge.

This post-award bid protest concerns a request by Plaintiff to enjoin performance and rescind the Army National Guard Bureau's ("ARNGB") award of contract to Spika Welding & Manufacturing, Inc. ("Spika") for the sale of helicopter maintenance platforms. The solicitation at issue provided that the award would be made on a "best value" basis with three evaluation factors (in descending order of importance): technical, past performance, and price. The proposals were further restricted to conform to specific "Minimum Performance" standards including that the platforms must be "commercial; non-developmental items."

Plaintiff is presently before the Court requesting it to issue a permanent injunction based on

the current filings and administrative record. Plaintiff argues that Spika's award of the platform contract was arbitrary and capricious and should thus be permanently enjoined. First, Plaintiff argues that because Spika had not actually sold the contracted platforms to the general public prior to responding to the Army's Solicitation, the platforms could not be classified as a commercial item. Second, Plaintiff argues that because Spika did not submit with its bid detailed engineering drawings of the platforms, the bid failed to meet all the requirements of the solicitation.

In response, Defendant has filed a Cross-Motion for Judgment on the Administrative Record. Defendant argues that Spika's previous offerings for sale of the platforms satisfy the "commercial item" definition. Defendant further argues that Spika did submit detailed engineering drawings with its bid, and if it did not, the lack of technical engineering drawings does not make the ARNGB's decision to award the contract to Spika arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

After full briefing, oral argument, and careful consideration, the Court **GRANTS** Defendant's Cross-Motion for Judgment on the Administrative Record and **DENIES** Plaintiff's Motion for Judgement on the Administrative Record.

## FACTS AND PROCEDURAL HISTORY

On August 6, 2007, the ARNGB issued a Solicitation for procurement of maintenance platforms for various helicopters. The Solicitation included a three page "Performance Specification" referencing "Portable Aircraft Maintenance Platforms." AR 3. The Solicitation also incorporated by reference and implication all Federal Acquisition Regulations (FAR) and definitions that were applicable to the Solicitation. AR 18; P. Br. at 8; Def. Br. at 15.

The Solicitation Specification provided that the award would be made based on "the best value to the government . . . determined by results of evaluation . . . based upon past performance, technical and price." AR 6. The Specification further provided that "[t]he portable maintenance platform shall be a commercial, non-developmental item." AR 4. Finally, the Specification required "[d]etailed engineering drawings complete with design specifications/dimensions, and detailed descriptions" to "be provided by the vendor." AR 5.

On August 16, 2007 and August 22, 2007, the ARNGB issued two amendments to the Solicitation. The first amendment changed the nature of the type of maintenance platform required and also provided that platforms "not currently available" would be considered for award. AR 28. To that end, the first amendment's Design Specifications section read as follows:

> If the platform(s) above is/are not currently available, the following will be provided by the vendor:
> 1. Time required to submit engineering drawings for NGB review.
> 2. Detailed engineering drawings complete with design specifications/dimensions, and detailed descriptions.

> 3. Lead times for delivery of required maintenance stands once NGB review/approval of engineering drawings has been conducted and provided to vendor.

AR 28. The second amendment provided for additional modifications to the Performance Specifications, and provided answers to two questions. AR 30. One of the two questions and its respective answer read: "'[a]re you referencing previously designed and in use full wrap around phase/depot level maintenance platforms?' YES." AR 30.

In response to the Solicitation, the ARNGB received proposals to construct and sell the specified products from three parties: the Plaintiff - Precision Lift, Inc. (PLI), Spika, and a third contractor that has since withdrawn its proposal. After reviewing and evaluating the three proposals, the ARNGB rated each contractor's quote in the three categories mentioned above and awarded the contract to Spika on September 15, 2007. AR 771-790.

On October 4, 2007, PLI filed a post-award protest with the Government Accountability Office (GAO). It alleged that the platforms offered by Spika did not meet the Performance Specification's requirements for a commercial, non-developmental item, because Spika had not previously produced the platforms called for in the Solicitation. AR 791-805.

In response to PLI's GAO protest, the ARNGB took corrective action, including reevaluating the past-performance of the parties who submitted proposals and conducting further research on whether Spika's proposal contained commercial non-developmental items. AR 882. On March 25, 2008, the ARNGB completed the corrective action and determined that the maintenance platforms offered by Spika met the Solicitation's requirements for a "commercial, non-developmental item." AR 888. Following the contracting officer's review of the "commercial, non-developmental item" issue, the contracting officer prepared a revised Source Selection Decision Document. AR 889-892. In that document, the contracting officer reiterated that Spika's proposed platforms represented the best value to the Government:

> "As stated in the solicitation, technical and past performance, when combined, are *significantly* more important than price. I find that Spika's clear technical superiority and essentially equal past performance outweigh the lower cost/price offered by Precision Lift."

AR 892 (emphasis in original). On March 31, 2008, the ARNGB issued to Spika a notice to proceed with work on the contract. AR 941.

On April 8, 2008, PLI filed a second GAO protest challenging the ARNGB's reevaluation of quotes on several bases, again arguing "that Spika's platforms did not meet the requirement in the Performance Specification for a 'commercial, non-developmental item,' because Spika had never previously produced any of the platforms being procured." Compl. at ¶ 39. On June 26, 2008, GAO denied PLI's protest, finding the ARNGB reasonably determined that Spika's quote complied with the solicitation's requirement to provide a "commercial, non-developmental item." AR 1105.

3

On July 10, 2008, PLI filed this post-award bid protest requesting this Court to declare the ARNGB's award of the Contract to have been arbitrary and capricious in that (1) "it was based on an erroneous belief . . . that Spika had previously produced platforms of this type," and (2) "Spika's offered platforms do not comply with the requirements for 'commercial non-developmental items' set forth in the Performance Specification." Compl. at ¶ 45. Simultaneously with its Complaint, PLI also filed a Motion for Temporary Restraining Order, and a Motion for Preliminary Injunction. On July 18, 2008, Defendant filed their Response. After argument, on July 25, 2008, this Court issued an Order denying Plaintiff's Motion for Temporary Restraining Order and denying Plaintiff's Motion for Preliminary Injunction.

On July 28, 2008, Plaintiff filed a Motion for Judgment on the Administrative Record. On August 11, 2008, Defendant filed its Response and a Cross-Motion for Judgment upon the Administrative Record. Oral Argument was held on August 26, 2008, and the matter was taken under advisement.

## STANDARD OF REVIEW

### 1. Standard for Procurement Challenges

In reviewing an agency's decision in a bid protest, this Court uses the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2006). *Arch Chems, Inc. v. United States*, 64 Fed. Cl. 380, 384-85 (2005). Thus, a protestor must show that the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A).

To determine whether the Agency's decision was one that was arbitrary and capricious, the Court must review whether a rational basis for the agency's decision was lacking or a violation of an applicable regulation or procedure occurred during the procurement process. *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1333 (Fed. Cir. 2001). Furthermore, "[d]eference must be afforded to an agency's . . . procurement decisions if they have a rational basis and do not violate applicable law or regulations." *M.W. Kellogg Co. v. United States*, 10 Cl. Ct. 17, 23 (1986). "This deference is particularly great when a negotiated procurement is involved and is greater still when the procurement is a 'best value' procurement." *Bean Stuyvesant, LLC v. United States*, 48 Fed. Cl. 303, 320 (2000) (citations omitted). The Court will "interfere with the government procurement process 'only in limited circumstances.'" *EP Production, Inc. v. United States*, 63 Fed. Cl. 220, 223 (2005) (citations omitted). And, in evaluating an agency's decision, the Court cannot "substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

### 2. Standard for Judgment on the Administrative Record

This Court reviews the agency's procurement decisions to determine whether they are

supported by the already-existing administrative record. RCFC 52.1. Unlike a Rule 56 motion, "proceeding under RCFC [52.1] merely restricts the evidence to the agency record . . . ." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). "Thus, the central inquiry on a motion for summary judgment -- whether the movant has proved its case as a matter of fact and law or whether a genuine issue of material fact precludes summary judgment -- has no bearing on a review of the administrative record . . . ." *Tech Systems, Inc. v. United States*, 50 Fed. Cl. 216, 222 (2001).

Unlike a motion for summary judgment, the question of whether an issue of material fact is disputed has no bearing upon a review of the administrative record in a record review case, such as a bid protest. The inquiry, instead, is whether, given all the disputed and undisputed facts, the plaintiff has met its burden of proof that the contracting officer's decision was arbitrary, capricious, or contrary to law. *Id.* (citing *CCL Serv. Corp. v. United States*, 48 Fed. Cl. 113, 119 (2000)). In reviewing the agency's action under this narrow, deferential standard, "the focal point for judicial review should be the administrative record already in existence, not some record made initially by the reviewing court." *Florida Power & Light v. Lorion* 470 U.S. 729, 743-44 (1985) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

## **DISCUSSION**

There are currently two issues before this court. First, Plaintiff argues that Spika's platforms are not "commercial items" as required in the Solicitation. Second, Plaintiff argues that Spika did not satisfy the Solicitation requirement of submitting engineering drawings with their bid.

### **A. Spika's Platforms are Commercial Items**

Plaintiff and Defendant argue different meanings for the term "commercial items." Plaintiff argues "that Spika's platforms did not meet the requirement in the Performance Specification for a 'commercial, non-developmental item,' because Spika had never previously produced any of the platforms being procured." Compl. at ¶ 39. Alternatively, Defendant argues that Spika's platforms are commercial items because they had previously been offered for sale to the general public. Def. Br. at 16. For the reasons below, the Court cannot agree with Plaintiff that this statute should be read so narrowly as to find Spika's platforms not commercial items because they had never manufactured them.

The ARNGB Solicitation required that the proposed platforms be "commercial items." The FAR definition of "commercial item" is controlling, and reads as follows:

> (1) Any item, other than real property, that is of a type customarily used by the general public or non-governmental entities for purposes other than governmental purposes, and -
>     (i) Has been sold, leased, or licensed to the general public;
>     (ii) Has been offered for sale, lease, or licensed to the general public;
> (2) Any item that evolved from an item described in paragraph (1) of this definition through advances in technology or performance and that is not yet available in the

>    commercial marketplace, but will be available in the commercial marketplace in time
>    to satisfy the delivery requirements under a Government solicitation;

FAR 2.101.

In order to be considered "commercial items" under FAR 2.101(1), the Court must first determine whether Spika's platforms are of a type customarily used by the general public. The Court finds that Spika's platforms satisfy this requirement. The Administrative Record makes clear that they are a "standard 'non-patented and non-proprietary maintenance platform design that have been in service for several years.'"AR 888. Further, "they are 'in common use," AR 943, and Plaintiff does not dispute this.

Finding that the platforms are a type customarily used by the general public, the Court must then determine under FAR 2.101(1)(ii) whether Spika's platforms have been "offered for sale to the general public". Plaintiff argues that this Court should assume the term "offer," in the FAR definition of "commercial item," as being synonymous with the contractual term "Offer" - defined by the FARs as "a response to a solicitation that, if accepted, would bind the offeror to perform the resultant contract." FAR 2.101. The Court finds this to be a very narrow reading of the FAR. In contrast, Defendant argues that Spika's platforms are commercial items because they had previously been offered for sale to the general public. Def. Br. at 16. The Court agrees with Defendant's interpretation. Given that the first amendment to the Solicitation clearly allowed for platforms not currently available, the intent of the term "offer" in the "commercial item" definition can not be a binding contractual "Offer" as Plaintiff proposes.

To satisfy this portion of the "commercial item" definition then, the question must weigh on whether Spika's platforms were "offered for sale" as the FAR requires. It appears obvious that Spika has certainly offered their platforms for sale to the general public. The Administrative Record details various advertising and marketing efforts, and even the original Spika proposal included standard product brochures. AR 815, 1050, and 732. Therefore the Court holds that Spika's platforms satisfied the FAR definition of "commercial items." However, this is not to say that the statute is clear. The definition is broad, unclear, and will be interpreted as setting the "commercial item" standard very low. If the Federal Acquisition Regulations are intended to use the term in a very limiting way, its plain language does not communicate that intent.

### B. The Lack of Detailed Engineering Drawings Submitted with Spika's Bid Does Not Make the ARNGB's Award of the Contract to Spika Arbitrary, Capricious, or an Abuse of Discretion

The first amendment to the Solicitation allowed for vendors to propose a platform that was "not currently available." AR 28. That modification also stated that if a vendor should intend to provide such a platform, the bid should include "[d]etailed engineering drawings complete with design specifications/dimensions, and detailed descriptions. *Id.*

The Administrative Record reveals that Spika did submit a thirty-five page proposal with

detailed information on the proposed platforms including dimensions. AR 752-756. While this information might not be considered a blue-print schematic, this Court finds it does rise to the level required by the Solicitation.

Finally, despite the lack of detail in the proposal's drawings, the ARNGB still found it sufficient to perform a technical evaluation of Spika's platforms, and to rate Spika's platforms as "very good." AR 757-760. Moreover, the amount of information supplied subsequently in the Administrative Record clearly shows that Spika was fully capable of providing the ARNGB more detailed drawings should they have been required.[1]  *See* AR 1048-1049.

## **CONCLUSION**

For the reasons set forth above, the Court must defer to the agency at this time. Therefore, the Court hereby **GRANTS** Defendant's Motion for Judgement on the Administrative Record. All other issues in this case are moot as a result of this opinion.

The Clerk is directed to enter judgement in this matter.

**It is so ORDERED**.

 s/Loren A. Smith  
LOREN A. SMITH  
Senior Judge

---

[1] The first amendment to the Specification also requested detail regarding "[t]ime required to submit engineering drawings." AR 28. This implies that extremely detailed drawings were not required in the initial proposal.